Jose F. ESCUDE CRUZ et al.,
Plaintiffs-Appellants,

v.

ORTHO PHARMACEUTICAL CORP. et
al., Defendants-Appellees.

No. 79–1297.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1979.

Decided March 26, 1980.

 

Ernesto Maldonado-Perez, with whom Maldonado & Ortiz, San Juan, P. R., was on brief, for plaintiffs-appellants.

Manuel A. Guzman, Guaynabo, P. R., with whom McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., was on brief, for defendants-appellees.

Before CAMPBELL and BOWNES, Circuit Judges, CLARKE,* District Judge.

BOWNES, Circuit Judge.

The jurisdictional question before us arises from a diversity personal injury ac-

---

* Of the Eastern District of Virginia, sitting by designation.

tion against Ortho Pharmaceutical Corporation (OPC), a New Jersey corporation, and its officers and directors, all residents of New Jersey. OPC is the sole owner of Ortho Pharmaceuticals, Inc. (OPI), a Puerto Rican corporation, where plaintiff-appellant was employed. Plaintiff claims that he was contaminated while working at OPI causing loss of sexual appetite, a reduction in his sperm count so as to make him unable to father a child and enlargement of his chest so that it resembled that of a woman. He alleges that this was due to the negligence of defendants in that they failed to warn him of the danger involved in his work or take precautions against it. He and his wife seek a total of $8,000,000 in damages. Because the injury he complains of is work-related, his direct employer, OPI, is immune from suit under 11 L.P.R.A. § 21, the Puerto Rico Workmen's Compensation Act. Jurisdiction over the defendants is predicated on Puerto Rico's long-arm statue, P.R. Laws Ann. tit. 32, App. II R. 4.7.

The district court found insufficient contacts between the corporate defendant, the individual defendants, and the forum under Puerto Rico's long-arm statute and dismissed for lack of jurisdiction.[1] We affirm.

Puerto Rico's long-arm statute provides two possible independent bases for jurisdiction in this case:

> (a) Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal jurisdiction over said nonresident as if he were a resident . . . if the action or claim arises as a result of the following:
>> (1) Such person or his agent carries out business transactions within Puerto Rico; or
>> (2) Executes by himself or through his agent, tortious acts within Puerto Rico[.]

P.R. Laws Ann. tit. 32, App. II R. 4.7.

■ The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance*

*Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371 (9th Cir. 1977); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974).

■ Both subsections (1) and (2) of the Puerto Rico rule have at their core an inquiry into whether a nonresident defendant has sufficient contacts with the forum so as to justify subjecting him to its courts' jurisdiction. *World-Wide Volkswagen Corporation v. Woodson, District Judge of Creek County, Oklahoma*, —— U.S. ——, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Considerations of "fair play and substantial justice" require in each case a careful scrutiny of the defendant's activities. *International Shoe* at 316, 66 S.Ct. at 158. If defendant has purposely availed himself of the privileges and protections of a state's laws, and he ought reasonably to foresee that his activities may have potential consequences in that state that would require him to defend an action there, he will be amenable to *in personam* jurisdiction. *World-Wide Volkswagen Corporation, supra; Hanson v. Denckla, supra; Commodities World International Corp. v. Royal Milc, Inc.*, 440 F.Supp. 1373, 1378–80 (D.P.R.1977).

■ In *A. H. Thomas Co. v. Superior Court*, 98 P.R.R. 864 (1970), the Supreme Court of Puerto Rico, relying on *Hanson v. Denckla, supra; McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), adopted a three-pronged test for determining whether *in personam* jurisdiction can be asserted over a nonresident. One, there must be an act done or consummated within the forum by the nonresident defendant. Physical presence is not necessary; the act or transaction

---

1. There were two separate opinions by the district court. The first addressed jurisdiction as to the individual defendants. The second was directed to jurisdiction over OPC and also responded to plaintiffs' motion for reconsideration as to the individual defendants.

may be by mail. Two, the cause of action must arise out of the defendant's action within the forum state. Three, the activity linking defendant, forum and cause of action must be substantial enough to meet the due process requirements of "fair play and substantial justice." 98 P.R.R. at 870.

■■ Whether defendant's contact with the forum is described as an "affirmative act" or "purposeful availment," the inherent foreseeability of consequences is one of the keystones of · personal jurisdiction. *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 891–92 (1st Cir. 1977). That the cause of action against a nonresident must have resulted from the defendant's activity makes it clear that not any act of the defendant within the state will suffice. There must be some rational nexus between plaintiff's claim and the activity of the nonresident defendant before it is constitutionally permissible to hold him amenable to suit in that state's courts.

We first examine the question of jurisdiction as to OPC. Appellant claims Rule 4.7(a)(1) confers jurisdiction on OPC based on its business transactions within Puerto Rico. Appellant points to two activities connecting OPC with Puerto Rico. First, he asserts that OPC, as sole owner of OPI, is the company ultimately enriched by any benefits inuring to OPI through its Puerto Rican operations. Second, appellant focuses on the fact that in 1969 OPC applied for and was granted a trademark in Puerto Rico by the Commonwealth's Department of State.

■ The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Blount v. Peerless Chemicals (P.R.) Inc.*, 316 F.2d 695 (2d Cir.), *cert. denied sub nom., Colbert v. Peerless Chemicals (P.R.) Inc.*, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963). There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of

the subsidiary. *Bendix Home Systems, Inc. v. Hurston Enterprises*, 566 F.2d 1039 (5th Cir. 1978); *Blount v. Peerless Chemicals (P.R.) Inc., supra.* Under Puerto Rico law, the requirement for piercing the corporate veil is that "strong and robust evidence" be produced showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former. *San Miguel Fertilizer Corp. v. P.R. Drydock & Marine Terminals*, 94 P.R.R. 403, 409 (1967). "Jurisdiction over the parent therefore becomes unfair to the extent that the independence of the local subsidiary is a reality." *Blount v. Peerless Chemicals (P.R.) Inc.*, 316 F.2d at 699. As we said in the analogous context of determining diversity jurisdiction, the fact that the parent may own all of the stock of the subsidiary and even maintain control incident to stock ownership does not justify ignoring the separateness of the two corporations. *de Walker v. Pueblo International, Inc.*, 569 F.2d 1169, 1173 (1st Cir. 1978). In order to find that jurisdiction over the subsidiary results in jurisdiction over the nonresident parent, plaintiff must show that the parent exercised the type of control "necessary to ascribe to it the activities of the subsidiary." *Product Promotions, Inc. v. Cousteau*, 495 F.2d at 493. Therefore, whether the subsidiary is only an empty shell is a question of fact, and allegations of interlocking directorates and stock ownership will not alone suffice.

■ Appellant has done no more than make conclusory allegations about the relationship between OPC and OPI. As the district court correctly noted:

It may be very true that the parent ultimately reaps the benefits of the subsidiary's business but such is always the case when all the stock evidencing ownership is in a corporation controled [*sic*] by the same entity. While this would support proof of a close business relationship it does not, without more, demonstrate that corporate forms were entirely disregarded.

Moreover, appellant's argument that OPI is either the agent or alter ego of OPC, if accepted, would defeat his substantive claim. OPC would then in fact be plaintiff's employer and the Puerto Rican workmen's compensation statute would immunize it from suit. Appellant cannot have it both ways.

 The trademark obtained by OPC in Puerto Rico is not a sufficient minimum contact to confer personal jurisdiction. Although it was an affirmative act and a purposeful availment of the protection of Puerto Rico's laws, it does not bear any relationship to the cause of action. There is no logical nexus between the OPC Puerto Rican trademark and the operations of OPI six years later that allegedly injured plaintiff. Considerations of "fair play and substantial justice" demand that personal jurisdiction not be based on a single contact with the forum, wholly unrelated to the plaintiff's claim. *See generally World-Wide Volkswagen Corporation v. Woodson, District Judge of Creek County, Oklahoma,* —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490, and *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Moreover, the Puerto Rico long-arm statute itself requires that plaintiff's claim arise as a result of "business transactions within Puerto Rico." The OPC trademark, without more, does not meet this requirement.

 In order to meet the test of Rule 4.7(a)(2), appellant must make out a prima facie case that OPC committed a tort in Puerto Rico. *Block Industries v. DHJ Industries, Inc.,* 495 F.2d 256 (8th Cir. 1974); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973). The commission of a tort in Puerto Rico by OPC is a jurisdictional fact which plaintiff must prove. Since OPC and OPI are separate corporate entities, the alleged negligence of OPI cannot be imputed to OPC as a basis for jurisdiction. Without such imputation, plaintiff's claim that OPC committed a tort in Puerto Rico entirely vanishes.

 We now turn to the individual defendants. We assume for purposes of our discussion that they are officers and directors of OPI as alleged in the complaint, as well as OPC, although some of the affidavits are to the contrary. The general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation. *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974); *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969); Wright & Miller, Federal Practice and Procedure: Civil § 1069, Supp. at 39. There must be an independent basis for asserting long-arm jurisdiction over the New Jersey officers and directors of OPI. Appellant does not allege that these individuals had any contacts with Puerto Rico other than in their corporate capacity. Since appellant has not shown or even alleged that the individuals have engaged in personal business activities using the corporate form as a shield, Wright & Miller, *supra,* he must show minimally that they have transacted personal business within Puerto Rico. Not only did he fail to do so in the first instance, but each of the seven named defendants filed affidavits stating that they had never transacted personal business in Puerto Rico, and appellant failed to sustain his burden of rebutting them. We agree with the district court that appellant has produced no convincing evidence or argument to cause us to disregard the general rule requiring an independent basis for long-arm jurisdiction over individual corporate officers under Rule 4.7(a)(1).

Appellant next claims that there is jurisdiction over the individual defendants due to their alleged commission of tortious acts within the forum. The district court found as a matter of fact that none of the individuals was involved with OPI on an operations level and that, therefore, there was no causal connection between any of the defendants' acts and the claimed injury. This was a correct reading as to six of the individual defendants, but the court misread the affidavit of Robert Ciatto which stated

that he did exercise operational control as to OPI.[2]

■ Since appellant must make out a prima facie tort case in order to establish jurisdiction under Rule 4.7(a)(2), it is necessary to determine under what circumstances an individual corporate officer may be held liable to third parties for tortious conduct he commits on behalf of his corporate employer. The general rule, and the rule in this circuit, is that an officer of a corporation "is liable for torts in which he personally participated, whether or not he was acting within the scope of his authority." *Lahr v. Adell Chemical Co.*, 300 F.2d 256, 260 (1st Cir. 1962). What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury. One of the more thorough statements of the general rule is provided by the Tenth Circuit:

> It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

*Lobato v. Pay Less Drug Stores*, 261 F.2d 406, 408–09 (10th Cir. 1958). *See also Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1143–44 (4th Cir. 1975); *Hagemeyer Chemical Co. v. Insect-O-Lite*

*Co.*, 291 F.2d 696, 699 (6th Cir. 1961) (*per curiam*); 3A Fletcher Cyc. Corp. § 1137 (1975).

Cases which have found personal liability on the part of corporate officers have typically involved instances of direct personal participation, as where the defendant was the "guiding spirit" behind the wrongful conduct, *Marks v. Polaroid Corp.*, 237 F.2d 428, 435 (1st Cir. 1956), or the "central figure" in the challenged corporate activity, *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 605–06 (3d Cir. 1978).

There is no indication in the decisions of the Commonwealth that Puerto Rico would apply a different rule in this situation. *Lopez Rodriguez v. Delama*, 102 D.P.R. 254 (1974), is not to the contrary. There, the corporate treasurer who was also a shareholder of the employer corporation was held liable for his own tortious conduct, in negligently operating an automobile, despite the immunity of the corporation from suit under the workmen's compensation statute. There is no indication in *Delama* that a corporate officer would be liable for a corporate tort in which he did not have a direct involvement; the absence of liability in such cases is a function of tort law and has nothing to do with employer immunity under workmen's compensation.

■ The question, therefore, is whether the complaint, together with the affidavits of the individual defendants, allege sufficient facts to establish that any of them personally participated in causing plaintiff's injury. Since plaintiff failed to counter the affidavits, the jurisdictional facts stated therein are controlling. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. at 189, 56 S.Ct. at 785. Since the unrebutted affidavits of six of the individual defendants establish that they were not involved at all with OPI on an operational level, there could be no personal participation by them in any actions causing plaintiff's injury.

---

**2.** "During the period I served on the Board of Ortho Pharmaceutical Corporation, I worked with other Board members to provide broad business, and commercial direction, particularly with regard to operations matters, to Ortho Pharmaceutical Corporation. In addition, I am presently and have been a member of the Board of Directors of Ortho Pharmaceuticals, Inc., its offices being located in Dorado Beach, Puerto Rico, and as such I provide broad business, commercial, and operations direction to it."

However, because Ciatto did state in his affidavit that he provided "broad, business, commercial and operations directions" to OPI, we must examine the complaint to determine if a prima facie tort claim has been established.

The complaint states that plaintiff complained of the hazardous condition at the Dorado plant to his superiors, but does not say that he forwarded such complaints to the management or directors of the company or that he spoke directly to any of the directors. It also states that "[a]ll of the defendants exercise exclusive control over OPI." Finally, the complaint alleges that:

> In spite of the fact that the defendants knew or should have known of the dangers inherent in the type work performed by plaintiff Jose F. Escude, they neither warned the latter with respect thereof nor did they take the measures necessary to avoid said plaintiff's contamination
>
> . . . .

These conclusory allegations are insufficient to show personal participation on the part of Ciatto in any conduct that harmed the plaintiff. Moreover, nowhere in the complaint is there any allegation as to specifically what caused the contamination. The complaint is not only conclusory, it is illusory. Since no prima facie tort case has been made out, there is no jurisdiction as to Ciatto under Rule 4.7(a)(2).

Finally, appellant argues that Rule 4.7(a)(2) should be interpreted to confer jurisdiction over a nonresident who commits a tort outside of Puerto Rico which causes injury within the Commonwealth. We need not reach this issue[3] because, as the district court pointed out, no jurisdictional facts were adduced to show that the injury was caused by acts of the defendants committed outside of Puerto Rico, nor was there any allegation to that effect.

*Affirmed.*

CLARKE, District Judge (dissenting).

While I concur in the conclusions of law reached by my colleagues, I respectfully disagree with the determination that jurisdiction may not be asserted over the individual defendant Robert Ciatto.

Six of the individual defendants expressly denied in their affidavits any operational responsibility or involvement as to either Ortho Pharmaceutical Corporation (OPC), the New Jersey corporation, or to Ortho Pharmaceuticals, Inc. (OPI), the Puerto Rican corporation. Robert Ciatto's affidavit contained no such denial, and, in fact, contained an affirmative statement of operational control over OPI. Defendant Ciatto stated in his affidavit:

> During the period I served on the Board of Ortho Pharmaceutical Corporation, I worked with other Board members to provide broad business, and commercial direction, particularly with regard to operations matters, to Ortho Pharmaceutical Corporation. In addition, *I am presently and have been a member of the Board of Directors of Ortho Pharmaceuticals, Inc.*, its offices being located in Dorado Beach, Puerto Rico, *and as such I provide* broad business, commercial, and *operations direction to it.* (emphasis added).

I am of the opinion that the language, as emphasized, in this affidavit reflects sufficient involvement in OPI's operations to render Mr. Ciatto amenable to service of process and jurisdiction under the Puerto Rico long-arm statute, P.R. Laws Ann. tit. 32, App. II R. 4.7, and the law cited in the majority opinion of this Court.

My colleagues reasoned that Mr. Ciatto's providing "broad business, commercial and operations directions" to OPI did not reflect sufficient personal involvement by Ciatto in the conduct that harmed plaintiff. Plaintiff, however, complains of an overall failure of management to give warnings that his workplace at OPI allegedly was contaminated; he does not complain of a specific, isolated act, such as a failure to inspect a loose beam which falls and injuries a party, a situation over which a board of directors

---

3. The district court suggested that the Rule might be interpreted as appellant urges, and we do not disagree. The interpretation of the Rule, of course, is a matter for the Commonwealth courts.

has little or no control. By Mr. Ciatto's own affidavit, he admits involvement in directing the operations of OPI. Such general policy direction should certainly encompass a decision to give or not to give warnings regarding the workplace of OPI, thereby constituting a prima facie case of jurisdictional facts under Puerto Rico's long-arm statute. Under this analysis of Mr. Ciatto's involvement, then, the district court's holding as to jurisdiction over him should be reversed, and the matter remanded. Insofar as there was no jurisdiction as to OPC and six of the seven individual defendants, the district court should be affirmed.