INAMAR INVESTMENT,
INC., Plaintiff,

v.

LODGE PROPERTIES, INC.,
Defendant.

Civ. No. 88–1311CCC.

United States District Court,
D. Puerto Rico.

May 24, 1990.

José W. Cartagena, Nevares, Cartagena & Quiñones, San Juan, P.R., for plaintiff.

Roy J. Cohen, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This diversity action for breach of contract is presently before the Court on the motion to dismiss for lack of personal jurisdiction filed by Lodge Properties, Inc. (Lodge) (docket entry 6). After a careful consideration of the briefs filed by the parties, the affidavits and the exhibits presented, the Court finds that it lacks personal jurisdiction over the defendant.

The following facts are relevant to the resolution of said motion. Plaintiff, Inamar Investment, Inc. ("Inamar"), is a corporate citizen of the Commonwealth of Puerto Rico. Defendant is a corporate citizen of the state of Colorado. It maintains its only office in Vail, Colorado, where it conducts the business of managing and renting hotel rooms and condominium apartments owned by it and others in Vail. Lodge has never maintained an office or agent in Puerto Rico, has never been authorized to do business in Puerto Rico, and has never appointed an agent for service of process in Puerto Rico. Likewise, Lodge has never filed reports with or paid taxes to the government of Puerto Rico.

On February 13, 1986, Mr. Dionisio Trigo, president and sole shareholder of Ina-

mar, purchased a condominium sublease in unit 186 of the Lodge South Condominium Building in Vail. Mr. Trigo immediately transferred his interest in unit 186 to plaintiff. At the time plaintiff acquired unit 186, defendant was the manager of the condominium owners' association under a contract ("management agreement") entered on July 1, 1983 with the Lodge South Condominium Association ("association"). Upon its acquisition of unit 186, plaintiff became a member of the association.

Pursuant to the management agreement, defendant had the exclusive right to act as rental agent for those condominium sublessees who desired to rent their units to the general public. Consequently, it then mailed to Mr. Trigo to his address in Puerto Rico a condominium owners information sheet and a rental agreement for unit 186, stating that if unit 186 was to be rented, the rental agreement should be signed and returned to defendant. Mr. Trigo, as president of plaintiff, then signed the contract provided by Lodge. Under its terms, and as designated by Mr. Trigo, all notices, requests, consents and other communications were to be served at his address in Puerto Rico. Accordingly, during the period this agreement was in effect, from February 1986 to September 1986, defendant mailed to plaintiff at the designated address monthly statements regarding charges and credits for unit 186.

In July, 1986, the association notified defendant that it would not renew the management agreement at the end of its term on September 30, 1986. In view of this decision, a letter was sent to Mr. Trigo by Dale Olsen, then director of properties of Lodge, at the address stated in the rental agreement to inquire whether he intended Lodge to continue acting as rental agent for unit 186. As no reply to the letter was received, Mr. Olsen then contacted Mr. James S. Jacobsen, Mr. Trigo's agent in Colorado to discuss unit 186.

There were several additional contacts with Puerto Rico by defendant. During the period from April 1986 to October 1986, Lodge responded on three occasions to letters from Mr. Trigo which contained inquiries regarding activities on the property or requests to reserve unit 186 for personal use. Furthermore, on March, April and May 1987 Lodge sent statements of account to Mr. Trigo regarding patio furniture ordered by him for unit 186 on July 29, 1986.

In reviewing personal jurisdiction in a diversity case, a federal court must traditionally conduct a two-fold inquiry. Initially, it must consider whether jurisdiction is authorized by state statute. If that is the case, such exercise must be found to be consistent with due process. *Com. of Puerto Rico v. S.S. Zoe Colocotroni*, 628 F.2d 652, 667 (1st Cir.1980). Without discussing whether the requirements of Puerto Rico's long-arm statute have been met, we find that defendant lacks the constitutionally required "minimum contacts" with Puerto Rico to support an assertion of jurisdiction over it by the court. *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990).

As it is now axiomatic, in order for an exercise of personal jurisdiction to be consistent with due process the nonresident defendant must have some minimum contact with the forum which results from an affirmative act on the part of the nonresident. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In evaluating a nonresident contact with the forum, we must determine whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958), *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

In the case at bar, and according to the aforementioned facts, Lodge's only contacts with Puerto Rico were 1) the mailing of a contract to Inamar, a resident of the forum, 2) the mailing of numerous commu-

nications related to the contract to an address in Puerto Rico unilaterally designated by plaintiff, and 3) the mailing of at least six additional communications in response to contacts initiated by plaintiff. As previously anticipated, we conclude that these contacts, although they may seem to be numerous, are in fact insufficient to support an assertion of jurisdiction.

With regard to the contract, it has been repeatedly observed that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction. *Ganis Corp. of California v. Jackson,* 822 F.2d 194, 197 (1st Cir.1987), *Nicholas v. Buchanan,* 806 F.2d 305, 307 (1st Cir.1986). The Supreme Court has emphasized "the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction'" and has further stated that "(i)t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 479, 105 S.Ct. at 2185 (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–317, 63 S.Ct. 602, 604–605, 87 L.Ed. 777 (1943)).

In this case, we note that the "contract", i.e. the rental agreement entered into between the parties, was never negotiated in Puerto Rico, as it was mailed, already drafted, to the forum for acceptance or rejection by plaintiff of all of the terms contained in it. The only addition plaintiff made to the contract was the designation of the name and address of the person to whom all future communications were going to be mailed, a unilateral act on its part that was never intended to be the subject of negotiations. *See Stuart v. Spademan,* 772 F.2d 1185, 1193–94 (5th Cir.1985) (exchange of communications between a forum resident and a nonresident in developing a contract not sufficient to be charac-

terized as purposeful activity invoking the benefits and protections of the forum state's laws); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1029 (5th Cir.1983) (same). Moreover, the material performance of the contract occurred in Colorado rather than Puerto Rico, as it was there where the apartment to be rented was located. Furthermore, we observe that the contract contained a provision specifying that Colorado law would govern the agreement, which clearly suggests that Lodge never had the intention of purposefully availing itself of the benefits and protections of Puerto Rico's laws. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 481–482, 105 S.Ct. at 2187 (discussing relevance of choice of law provision to minimum contacts analysis). It is evident, then, that under these circumstances, the contract could not be considered a minimum contact sufficient to support the assertion of jurisdiction over defendant.

We must also stress that the supplementary contacts of the defendant with this forum were all the result of unilateral activities conducted by plaintiff. As already stated, all communications related to the contract were mailed to Puerto Rico only because of plaintiff's selection of a Puerto Rican address to receive such correspondence. Defendant's additional mail contacts with the forum, which were not related to the contract, were always in response to previous requests for information made by plaintiff. Insofar as it has been repeatedly established that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state", *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1228, this exchange of communications between Colorado and Puerto Rico is insufficient to support jurisdiction under due process standards.

The motion to dismiss for lack of *in personam* jurisdiction filed by Lodge Properties, Inc. is hereby GRANTED. Plaintiff has failed to demonstrate that the activities of Lodge which were related to the Commonwealth of Puerto Rico evidence a purposeful availment by it of the benefits and

protections of the laws of this Commonwealth. Under the totality of the circumstances, the Court finds that dismissal of the complaint is appropriate and it is SO ORDERED.

SO ORDERED.